Lisa J. Frisella (SBN 216504)
Kimberly D. Neilson (SBN 216571)
**FRISELLA LAW, APC**
2139 First Ave., Suite 200
San Diego, California 92101
Telephone: (619) 260-3500
Facsimile: (619) 260-3600
Email: lisa@frisellalaw.com
       kim@frisellalaw.com

Bruce Steckler (TX SBN 00785039) (Pro Hac Vice forthcoming)
Dean Gresham (TX SBN 24027215) (Pro Hac Vice forthcoming)
Stuart Cochran (TX SBN 24027936) (Pro Hac Vice forthcoming)
L. Kirstine Rogers (TX SBN 24033009) (Pro Hac Vice forthcoming)
**STECKLER GRESHAM COCHRAN PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: bruce@stecklerlaw.com
       dean@stecklerlaw.com
       stuart@stecklerlaw.com
       krogers@stecklerlaw.com

John T. Palter (TX SBN 15441500) (Pro Hac Vice forthcoming)
**PALTER STOKLEY SIMS, PLLC**
8115 Preston Road, Suite 600
Dallas, TX 75225
Telephone: (214) 888-3111
Facsimile: (214) 888-3109
Email: jpalter@palterlaw.com

Attorneys for Plaintiff Blaise Williams
And the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

1

CLASS ACTION COMPLAINT

| | |
|---|---|
| BLAISE WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, PROGRESSIVE CORPORATION, PROGRESSIVE CASUALTY INSURANCE COMPANY, and MITCHELL INTERNATIONAL, INC.;<br><br>    Defendants. | CASE NO. **'17 CV 2282 AJB BGS**<br><br>CLASS ACTION COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, VIOLATIONS OF TEXAS INSURANCE CODE, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, CIVIL CONSPIRACY and DECLARATORY AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiff BLAISE WILLIAMS, individually and on behalf of all other similarly situated individuals, hereby complains against Defendants PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, PROGRESSIVE CORPORATION, and PROGRESSIVE CASUALTY INSURANCE COMPANY, (collectively "Progressive"), and MITCHELL INTERNATIONAL, INC. ("Mitchell"); Progressive and Mitchell are collectively referred to herein as "Defendants," and allege as follows:

## PRELIMINARY STATEMENT

1. Progressive bills itself as a fair and honest company. Progressive spends millions of dollars advertising its insurance. In those advertisements, Progressive holds itself out as an expert in the insurance industry, including automobile insurance, and touts itself as the "No. 1 commercial auto insurer."

2. Progressive, however, is not fair and honest.

3. When Progressive determines that damage to an insured's vehicle exceeds the cost to repair, the vehicle is deemed a "total loss," and the insured is

///

entitled to recover for the actual cash value of the vehicle at the time of the loss reduced by the applicable deductible.

4.   Progressive has outsourced its duty to Mitchell to determine the actual cash value of its insureds' total loss vehicles. Since at least 2010, Progressive and Mitchell have implemented a scheme to artificially deflate the value of "total loss claims."

5.   Progressive and Mitchell engage in unlawful, unfair, and deceptive business practices which facilitate and enable them to present lowball valuations to Progressive's insureds once a vehicle has been declared a total loss.

6.   In their scheme to unlawfully, unjustifiably, and artificially reduce the actual cash values paid to the insureds for their total loss vehicles, Progressive and Mitchell employ methods contrary to their contractual obligations, the Texas Insurance Code, and the common law.

## PARTIES

7.   Plaintiff Blaise Williams is an individual over 18 years of age. He is, and at all relevant times was, a resident of Houston, Texas.

8.   Defendants Progressive County Mutual and Progressive Casualty Insurance Company are a group of insurance companies operating under the umbrella of The Progressive Corporation. The Progressive Corporation is incorporated in Ohio and its headquarters and principal place of business is located at 6300 Wilson Mills Road, Mayfield Village, Ohio.

9.   Defendant Mitchell International, Inc. provides third-party administrative services for Progressive including claims administration and adjusting services relating to the valuation of total loss vehicles for insureds covered by Progressive's Texas Auto Policy. Mitchell is a Delaware Corporation. Mitchell's headquarters and principal place of business is located at 6200 Greenwich Drive, San Diego, California.

///

## JURISDICTION AND VENUE

10.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is diverse from at least one defendant, the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are more than 100 Class Members.

11.  This Court has personal jurisdiction over Defendant Mitchell because it is at home in the forum state.

12.  This Court has personal jurisdiction over Defendant Progressive because it has had more than minimum contacts with the State of California, has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state, specifically by contracting with Mitchell, a California citizen, to provide claims administration and adjusting valuation services for vehicles.

13.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, Mitchell and Progressive are residents of this state and judicial district. Moreover, venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.  Attached to this Complaint as Exhibit A is a true and correct copy of Progressive's Texas Auto Policy setting forth the terms of Progressive's insuring agreement ("the Policy" or "Texas Policy").

15.  At all relevant times, the Policy included the following relevant clauses:

/ / /

/ / /

/ / /

/ / /

**INSURING AGREEMENT - COMPREHENSIVE COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:
1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**. [1]

**LIMITS OF LIABILITY**

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.

. . .

2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:

. . .

f. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs. [2]

**PAYMENT OF LOSS**

**We** may, at **our** option:
1. pay for the loss in money; or
2. repair or replace the damaged or stolen property. [3]

---

[1] Ex. A at p. 17 (emphasis in original).

[2] Ex. A at pp. 21-22 (emphasis in original).

[3] Ex. A at p. 22 (emphasis in original).

**SETTLEMENT OF CLAIMS**

> **We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.[4]

16. In the Policy, Progressive represents that the actual cash value is determined by the market value, age and condition of the vehicle at the time the loss occurs.

17. The actual cash value offered to Progressive's insureds is not, however, based on the market value, age, and condition of the vehicle at the time the loss occurs.

18. Instead, Progressive and Mitchell employ a system to calculate actual cash value in a manner which allows them to reduce the calculated value they pay for "total loss vehicles."

19. Prior to 2010, Progressive determined the actual cash value of total loss vehicles in Texas by using the National Automobile Dealers Association ("NADA") Guidebook.

20. In 2010, Progressive began using a proprietary product called Work Center Total Loss ("WCTL") licensed from Mitchell to determine the "actual cash values" of total loss vehicles.

21. The WCTL methodology is different from the methodology used by NADA. WCTL provides total loss valuations automatically based on purported comparable vehicle data contained in its computer system and objective loss vehicle data provided to it by Progressive inspectors, called Manage Repair Representatives ("MRR"), through a computer interface.

22. Included among the data provided by Progressive's MRRs to Mitchell's WCTL system are the Vehicle Identification Number (VIN)—which

---

[4] Ex. A at pp. 28-29 (emphasis in original).

includes the vehicle make, model, configuration (e.g. extras) and year—as well as the mileage and license plate number.

23. Comparable vehicles referenced by Mitchell's WCTL may be in a wide variety of conditions.

24. Mitchell's WCTL system has no information as to the condition of the comparable vehicles and does not take such information into consideration in determining the base price.

25. Progressive's MRRs also assign a numerical value between 1 and 5 to reflect the overall vehicle condition as to each of thirteen characteristics listed in the Valuation Report, including Interior, Exterior, Mechanical and Tire.

26. WCTL uses weighted averages of the condition values to arrive at an overall condition score between 1 and 5.

27. Although Progressive's records contain descriptions of the vehicles' conditions which Progressive MRRs consider and use in the assignment of the overall condition value, Mitchell's WCTL computer system does not take this information into account, relying only on the numerical condition characteristics when reaching its value determination.

28. Relying on the loss valuation numerical value only, Mitchell's WCTL system locates vehicles comparable to the loss vehicle by searching a collection of vehicles being offered for sale by a dealer located as close as possible to the loss vehicle's zip code.

29. A marketing presentation by Mitchell to prospective insurance company clients stated that the average market value as determined by WCTL was $6,780, as compared to an average value of $7,680 under NADA.

30. Thus, Mitchell's WCTL system assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models like NADA.

///

31. Progressive's own tracking of its total loss claims adjusted under Mitchell's WCTL shows that from May 2012 to April 2014, an average of 78% of total loss vehicles received a downward condition adjustment as compared to only 18% that received an upward adjustment. The average condition adjustment for that period was - $301.

32. At all relevant times, Defendants engaged in a system of artificially reducing and deflating the value of declared "total loss vehicles" (vehicles where an election is made to forego any vehicle repair) in order to pay first party insureds less than the actual pre-loss value of the total loss vehicle.

33. For example, Mitchell's WCTL system has no information as to the condition of comparable vehicles.

34. Progressive and Mitchell's valuation process uses unjustified and unwarranted methods to artificially deflate vehicles' valuations through the use of false, fabricated, and deceptive representations as to comparable vehicles and unwarranted "adjustments" to comparable vehicles in the Mitchell valuation reports with no basis in fact or reality. These include, but are not limited to, the use of unjustified "projected sold adjustments" and adjustments to comparable vehicles based on alleged specifications and upgrades which in fact do not exist.

35. Progressive knows that its insureds facing total vehicle loss claims are most often also coping with injuries, lost time from work, and loss of their only means of transportation. As a result of these extenuating circumstances, Progressive's insureds are often at a severe disadvantage when it comes to settling claims under their policies.

## PLAINTIFF BLAISE WILLIAMS

36. On September 6, 2016, Blaise Williams purchased a 2016 GMC Yukon for $48,050.00, before tax, title and license.

37. At all relevant times, Mr. Williams had procured a Progressive Texas
///

8
CLASS ACTION COMPLAINT

Auto Policy that covered the 2016 GMC Yukon, and included full comprehensive coverage for his 2016 GMC Yukon.

38. On or about August 26, 2017, Mr. Williams' 2016 GMC Yukon sustained a sudden, direct and accidental loss resulting from Hurricane Harvey and the associated severe flooding.

39. Shortly after the hurricane, Mr. Williams filed a claim for the property damages relating to the 2016 GMC Yukon.

40. Progressive accepted the claim by Blaise Williams.

41. On or about September 20, 2017, Progressive inspected the 2016 GMC Yukon and notified him the vehicle had been declared a "total loss."

42. When Mr. Williams asked Progressive how it determined his vehicle to be a "total loss," Progressive stated that it was declaring any vehicle that got any amount of water into it from Hurricane Harvey to be a "total loss."

43. Approximately four to five days later, Progressive notified Mr. Williams that the vehicle's condition was rated three on a scale from one to three for all aspects of the car.

44. Progressive told Mr. Williams that, based on Mitchell's valuation system, the actual cash value of the 2016 GMC Yukon at the time of the loss was $38,109.27 and made a full and final offer to settle the claim for $40,341.34, which represented the valuation of $38,109.27, less the deductible of $245, plus taxes and fees.

45. After Mr. Williams questioned the valuation, a Progressive supervisor contacted Mr. Williams on October 1, 2017 and told him that Mitchell had checked and verified that the valuation of his vehicle was true and correct.

46. Using Mitchell's valuation system again, Progressive made a final offer to settle Mr. Williams' claim in the amount of $42,112.17, based on Defendants' valuation of $39,775.92, taxes in the amount of $2,486, fees in the amount of $95.25, minus the deductible of $245.

47. In fact, the actual cash value – based on the market value, age, and condition – of Mr. Williams's vehicle at the time of the flood was $44,025, significantly higher than the amount Progressive paid on Mr. Williams's claim.

48. The Mitchell valuation used by Progressive was fundamentally flawed because it included false adjustments to the comparable vehicles identified in Mitchell's valuation report. Mitchell and Progressive knew or should have known that the cash value assigned to Plaintiff's vehicle did not reflect the actual market value, age, and condition of the vehicle because the specific conditions of the comparable vehicles could be verified through an online search for those vehicles by VIN number.

49. If Progressive had made accurate determinations about the actual cash value of the vehicle, Mr. Williams would have recovered a significantly higher amount from Progressive pursuant to the automobile Policy.

50. Progressive and Mitchell operate on an unequal playing field, compared to its customers and insureds, including Mr. Williams.

51. Progressive contracted to pay Mr. Williams the actual cash value for his total loss vehicle, but in reality, Progressive worked with Mitchell in implementing a system designed to pay him less than the actual cash value.

## CLASS ACTION ALLEGATIONS

52. Pursuant to FRCP 23(a), (b)(2) and (b)(3), Plaintiff brings this action on his own behalf and on behalf of a proposed Class of all other similarly situated persons in Texas consisting of:

> *All insureds under Progressive's Texas Auto Policy whose vehicles were declared total losses by Progressive and were valued utilizing Mitchell's WCTL system ("the Class")*

53. Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in

which any Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

54. Upon information and belief, the Class consists of thousands of consumers. Accordingly, it would be impracticable to join all Class Members before the Court.

55. There are numerous and substantial questions of law or fact common to all of the members of the Class and which predominate over any individual issues. Included within the common question of law or fact to be shown through common evidence are:

   a. Whether Progressive's Texas Policy required it to pay actual cash value to its Texas insureds;
   b. Whether Progressive failed to pay actual cash value to its Texas insureds;
   c. Whether Progressive's contract disclosed all relevant information relating to its calculation of actual cash value of vehicles declared a total loss;
   d. Whether Mitchell's WCTL system's valuation represents the actual cash value of vehicles at the time of the loss;
   e. Whether Progressive's Texas Policy misrepresents a material fact or policy provision;
   f. Whether Progressive's Texas Policy fails to disclose material facts;
   g. Whether Progressive's Texas Policy is misleading with respect to material facts;

///

      h.    Whether Progressive and Mitchell had an agreement or understanding on how to calculate the actual cash value of vehicles declared a total loss; and

      i.    Whether Progressive and Mitchell had an agreement or understanding to artificially assess the market value, age and condition of a vehicle at the time of loss in order to reduce the actual cash value.

56. Plaintiff's claims are typical of the claims of Class Members, in that he shares the above-referenced facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiff and Defendants' conduct affecting Class Members, and Plaintiff has no interests adverse to the interests other Class Members.

57. Plaintiff will fairly and adequately protect the interests of Class Members and has retained counsel experienced and competent in the prosecution of complex class actions.

58. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

59. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, if any.

60. Defendants' use of valuation systems to artificially reduce the actual cash value of total loss vehicles will be shown through common evidence.

61. A class action is superior to other methods for the fair and efficient adjudication of this controversy because (1) there has been no interest shown of members of the class in individually controlling the prosecution of separate actions; (2) Plaintiff is aware of no other litigation concerning the controversy already commenced by any member of the class; (3) it is desirable to concentrate the

///

CLASS ACTION COMPLAINT

litigation in this forum; and (4) there are no difficulties likely to be encountered in the management of this class action.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT – PROGRESSIVE

62. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

63. Progressive agreed to pay Plaintiff and Class Members for the actual cash value determined by the market value, age, and condition of the vehicle at the time the loss occurred if it was deemed a total loss vehicle by Progressive.

64. Progressive breached this contract by failing to pay the actual cash value.

65. As a result, Plaintiff and Class Members were paid for their claims in an amount less than the actual cash value, as contractually required.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT – MITCHELL

66. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

67. The Texas Policy was a valid contract between Plaintiff and Class Members and Progressive. Under the Texas Policy, Progressive agreed to pay Plaintiff and Class Members for the actual cash value of their covered autos determined by the market value, age, and condition of the vehicles at the time the loss occurred if they were declared total loss vehicles.

68. In licensing or otherwise contracting the use of its WCTL system to Progressive, Mitchell had knowledge of the terms of the Policy between Plaintiff and Class Members and Progressive or had knowledge of facts and circumstances that would lead a reasonable person to know about the Texas Auto Policy, including its provisions for actual cash value on total loss vehicles.

69. Mitchell willfully and intentionally interfered with the contract by falsely representing the actual cash value of vehicles in its WCTL system such that Plaintiff and Class Members would never be paid based on actual market value, age, and condition of the vehicle.

70. Mitchell's WCTL system further contributed to or induced Progressive's failure to pay Plaintiff and Class Members the actual cash value for total loss vehicles and hindered the ability of Plaintiff and Class Members to receive the actual value for total loss vehicles.

71. Mitchell took an active part in interfering with Progressive's promise to pay the actual cash value with a total loss vehicle, proximately causing harm to Plaintiff and Class Members.

72. As a proximate result of Mitchell's wrongful conduct, Plaintiff and Class Members were damaged and denied the actual cash value for the total loss vehicles.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF TEXAS INSURANCE CODE – PROGRESSIVE

73. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

74. Plaintiff and Class Members are "persons" within the meaning of the Insurance Code § 541.002(2).

75. Plaintiff and Class Members were injured by Progressive's unfair practices in the business of insurance. Tex. Ins. Code § 541.151.

76. Progressive committed these violations of the Texas Insurance Code knowingly. Tex. Ins. Code § 541.152(b).

77. Progressive incorporated into the Policy the requirements of the Texas Insurance Code, Sections 541.060 and 541.061 relating to unfair and deceptive actions or practice in the business of insurance.

78. Progressive breached Texas Insurance Code Section 541.060(a) by:
    (1) misrepresenting to Plaintiff and Class Members a material fact or policy provision relating to coverage at issue;
    (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
        (A) Claims with respect to which the insurer's liability has become reasonably clear.
79. Progressive breached Texas Insurance Code Section 541.061 by:
    (1) making an untrue statement of material fact;
    (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and
    (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.
80. Progressive misrepresented that it would pay actual cash value and failed to state the material fact that the estimates, appraisal, and insurance evaluation systems used by Progressive in the settlement of claims were structured to artificially reduce the model value, age, and condition of the vehicles at the time of the loss.
81. As a proximate result of Progressive's wrongful conduct, Plaintiff and Class Members were damaged and denied the actual cash value for the total loss vehicles.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF TEXAS INSURANCE CODE – MITCHELL

82. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

///

83. Plaintiff and Class Members are "persons" within the meaning of the Insurance Code § 541.002(2).

84. Mitchell is an agent of Progressive under the Texas Insurance Code because Mitchell examines into, adjusts, or aids in adjusting a loss for or on behalf of Progressive. Tex. Ins. Code § 4001.051(b)(9).

85. Plaintiff and Class Members were injured by Mitchell's unfair practices in the business of insurance. Tex. Ins. Code § 541.151.

86. Mitchell breached Texas Insurance Code Section 541.060(a) by:
    (1) misrepresenting to Plaintiff and Class Members a material fact or policy provision relating to coverage at issue;
    (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
        (A) Claims with respect to which the insurer's liability has become reasonably clear.

87. Mitchell breached Texas Insurance Code Section 541.061 by:
    (1) making an untrue statement of material fact;
    (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and
    (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

88. Mitchell misrepresented the actual cash value of total loss vehicles and failed to state the material fact that its WCTL system was structured to artificially reduce the model value, age, and condition of the vehicles at the time of the loss.

89. As a proximate result of Mitchell's wrongful conduct, Plaintiff and Class Members were damaged and denied the actual cash value for the total loss vehicles.

WHEREFORE, Plaintiff prays for relief as set forth below.

# FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING – PROGRESSIVE

90. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

91. Texas law recognizes a duty of good faith and fair dealing in the insurance context. *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). The duty arises from the special relationship that is created by the contract between the insurer and the insured. *Id.*; see also *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) (recognizing that the duty arises "not from the terms of the insurance contract, but from an obligation imposed in law" as a result of the special relationship).

92. At all times herein mentioned, Progressive knew, or in the exercise of good faith reasonably should have known that Plaintiff and Class Members were legally entitled to recover the actual cash value of their vehicles, and that Progressive was obligated to provide Plaintiff and Class Members with the actual cash value for vehicles declared a total loss.

93. Once it declared Plaintiff and Class Member's vehicles a total loss, Progressive knew that its liability for the actual cash value was reasonably clear under the terms of the Policy.

94. Progressive denied and delayed payment when liability was reasonably clear.

95. As a proximate result of Progressive's wrongful conduct, Plaintiff and Class Members were damaged and denied the actual cash value for the total loss vehicles.

WHEREFORE, Plaintiff prays for relief as set forth below.

/ / /

/ / /

# SIXTH CAUSE OF ACTION
## CONSPIRACY – PROGRESSIVE AND MITCHELL

96. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

97. Progressive and Mitchell were members of a combination of two or more persons acting to further the common purpose of a conspiracy to implement a system to artificially reduce and falsely represent the actual cash value of vehicles declared total losses.

98. The object of the combination was to accomplish the unlawful purpose of defrauding and misleading Plaintiff and Class Members regarding the actual cash value of their vehicles.

99. In the alternative, the object of the combination was to accomplish the lawful purpose of estimating and appraising vehicles declared total losses by unlawful means, including use of the fraudulent WCTL system.

100. Progressive and Mitchell had an agreement or understanding about how to artificially reduce the actual cash value of vehicles declared total losses.

101. Both Progressive and Mitchell, in developing, licensing, and utilizing the WCTL system, committed unlawful and overt acts in furtherance of their conspiracy. In addition, Progressive committed the overt act of misrepresenting the actual cash value of the damaged and total loss vehicles.

102. As a proximate result of Progressive's and Mitchell's wrongful conduct, Plaintiff and Class Members were damaged and denied the actual cash value for the total loss vehicles.

WHEREFORE, Plaintiff prays for relief as set forth below.

/ / /

/ / /

/ / /

/ / /

# PRAYER FOR RELIEF

Plaintiff respectfully prays for relief as follows:

1. For an order certifying the proposed class;
2. For an order finding and declaring that Progressive's and Mitchell's acts and practices as challenged herein are unlawful, unfair and fraudulent;
3. For an order preliminarily and permanently enjoining Progressive
   a. from using Mitchell's valuation reports because Mitchell's reports rely on falsified, deceptive or misleading factors and data in the practices challenged herein and do not represent actual cash values; or
   b. from future violations of Texas law and mandating they disclose the use of Mitchell and that its value is lower than actual cash value;
4. For all damages authorized by law, including treble damages under Texas Insurance Code § 541.152(b);
5. For an accounting;
6. For pre-judgment interest to the extent permitted by law;
7. For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action under any applicable provision of law;
8. For interest provided by law;
9. For declaratory relief; and
10. For such other and further relief as the Court deems proper.

Respectfully Submitted,

s/ Kimberly D. Neilson, Esq.
FRISELLA LAW, APC
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all triable claims asserted in this Complaint.

Dated: November ___, 2017                Respectfully Submitted,

s/ Kimberly D. Neilson, Esq.
FRISELLA LAW, APC
Attorneys for Plaintiff

CLASS ACTION COMPLAINT