UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Blaise Williams, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Progressive County Mutual Insurance Company, Progressive Corporation, Progressive Casualty Insurance Company, and Mitchell International, Inc.,<br><br>Defendants. | Case No.: 17-cv-2282-AJB-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. No. 47)**<br><br>**DENYING AS MOOT DEFENDANTS' MOTION TO APPOINT INTERIM COUNSEL (Doc. No. 42)** |
|---|---|

Before the Court is Defendants Progressive County Mutual Insurance Company, Progressive Corporation, and Progressive Casualty Insurance Company's motion to dismiss for lack of jurisdiction. (Doc. No. 47.) For the reasons stated herein, the Court **GRANTS** Defendants' motion.

## I. BACKGROUND

Plaintiff, a Texas resident, brings this lawsuit alleging that Defendants have entered into a scheme in which Mitchell undervalues total loss vehicles such that Progressive does not have to pay out a full amount to insureds. Plaintiff owned a 2016 GMC Yukon before it was damaged by Hurricane Harvey. (FAC ¶ 53.) Plaintiff obtained insurance on the Yukon through Progressive County Mutual ("County Mutual"). (*Id.* ¶ 49.) The insurance

was a Texas Auto Policy. (*Id.*) Plaintiff filed a claim with Progressive, and Progressive deemed the car was a total loss. (*Id.* ¶¶ 54–56.) Plaintiff alleges the valuation used to determine the cash value of his vehicle was "fundamentally flawed" and brought suit based on a number of allegations that Mitchell and the Progressive Defendants were manipulating the system to award more favorable payouts to them. However, the merits of Plaintiff's claims are not at issue here, as Defendants challenge their inclusion on jurisdictional grounds.

## II. LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a Defendant to move for dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiffs have the burden to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). Federal courts have limited jurisdiction, and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the allegations in the complaint are not presumed to be true, *White*, 227 F.3d at 1242, and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its

2

burden of establishing subject matter jurisdiction." *Savage v. Glendale Union H.S., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *See id.* However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted)). Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists. *Kokkonen*, 511 U.S. at 377.

### III. DISCUSSION

Defendants argue that they should be dismissed from the complaint for lack of jurisdiction. Defendants' argument is two-fold: First, The Progressive Corporation ("TPC") argues that the other Progressive Defendants—County Mutual and Casualty Insurance—are not alter-egos of TPC, and thus the corporate veil cannot be pierced. Second, whether or not the corporate veil is pierced, TPC cannot be subject to California jurisdiction. If the veil indeed cannot be pierced, then TPC and the other Progressive Defendants do not have any contacts in California. If the veil can be pierced, TPC does not have enough sufficient contacts to establish general jurisdiction. The Court begins with TPC's alter-ego argument.

#### A. Alter-Ego Theory

Plaintiff argues that County Mutual and Casualty Insurance, as well as all of TPC's subsidiaries, are alter-egos of TPC. Defendant disputes that assertion. To establish alter-ego liability, and pierce the corporate veil, Plaintiff must establish that (1) "there is such unity of interest and ownership that the separate personalities of the . . . entities no longer exist;" and (2) "failure to disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

#### 1. Unity of Interest Factors

When assessing whether there is unity of interest for the purposes of alter ego liability, courts consider nine factors when assessing the first prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citation omitted).

Plaintiff alleges TPC is the alter-ego of the other two Progressive Defendants and California Progressive subsidiaries because Progressive presents itself in marketing and filings as one company, (FAC ¶ 14), County Mutual "has no employees, office space, supplies, or equipment and does not engage in any activity or operations," (*Id.* ¶ 15), County Mutual has the same phone number and address as TPC, (*Id.* ¶ 16), California Progressive subsidiaries also have the same address as "Progressive's Sacramento office," (*Id.*), TPC and the California subsidiaries' share officers and directors, (*Id.* ¶ 18), TPC includes its subsidiaries financials in SEC filings and disclosures, (*Id.* ¶ 19), and finally Progressive advertises to employees a one-company atmosphere, (*Id.* ¶ 22).

These allegations only go to the fourth, fifth, and possibly ninth factors. In fact, many of the facts Plaintiff alleges are similar to the allegations rejected in *Corcoran v. CVS Health Corporation*, 169 F. Supp. 3d 970, 983–84 (N.D. Cal. 2016). There, plaintiffs claimed that "CVS Health wholly owns CVS Pharmacy, the two entities have overlapping officers and directors, CVS Health presents itself as one integrated company on its website and in government filings for marketing purposes, and CVS Health has been involved in discrete business decisions of CVS Pharmacy." *Id.* In rejecting plaintiffs' attempt to pierce the corporate veil, the Court noted first that "it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary." *Id.* at 984 (quoting *Gerritsen v. Warner Bros. Ent., Inc.*, 116 F. Supp. 3d 1104, 1138–39 (C.D. Cal. 2015) (alteration omitted) (quoting *Sonora Diamond Corp.*, 83 Cal. App. 4th 523, 548–49 (2000)). Further, the Court noted that "courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest

4

required to show companies are alter egos." *Id.*; *See Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"); *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (website "marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos").

Defendant maintains that presenting itself as a single brand, having some officer/director overlap, and the fact that some subsidiaries do not have their own assets/employees is not enough to pierce the corporate veil. (Doc. No. 47-1 at 17.) Defendant further states that Progressive County's profile on the Texas Department of Insurance's website, which Plaintiff references, includes County Mutual's own financial information, not TPC's. (FAC ¶ 16.) TPC notes all the things it does not do, such as, sell insurance, supervise employees, control day-to-day operations, or pay losses of its subsidiaries. (Doc. No. 47-1 at 18; Uth Decl. ¶¶ 7–10.)

The Court also notes the factors that Plaintiff failed to allege. Plaintiff fails to show that Defendants have comingled funds, that there is identical equitable ownership of the entities, that the subsidiaries are inadequately capitalized, that they have disregarded corporate formalities, that there is a segregation of records, and that the directors and officers are identical—Plaintiff only alleges that some are overlapping. Taking all Plaintiff's allegations and arguments into consideration, the Court concludes Plaintiff has not satisfied the unity of interest prong. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (facts showing that parent wholly owned subsidiary, parent and subsidiary shared the same officers and directors, co-employed staff, and shared physical office space did not satisfy first prong of alter ego test); *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (finding that a showing of the third, fourth, and ninth factors "even when considered together, are not sufficient to support a finding of unity of interest among" the corporate

5

entities); *Pokemon Co. Int'l, Inc. v. Shopify, Inc.*, No 16-MC-80272-KAW, 2017 WL 697520, at *4 (N.D. Cal. Feb. 22, 2017) (facts showing that use of an office on a website without mentioning it is a separate entity, sharing same principal officers/executive/legal counsel, and collecting information under the same privacy policy was inadequate to satisfy unity of interest without evidence of control of day to day activities and disregard of corporate formalities).

Having found that Plaintiff failed to establish the first prong, the Court need not address the second prong of the alter ego test. Plaintiff did not make a prima facie showing that the Court can attribute Progressive's California subsidiaries' contacts with California to TPC or the other Progressive Defendants.

**B.     Subject Matter Jurisdiction over TPC**

Without alter-ego, Defendants assert the Court lacks jurisdiction over this case. First, Defendants argue that Plaintiff lacks Article III standing. To show standing, a Plaintiff must establish (1) he suffered an injury in fact; (2) a "casual connection between the injury and the conduct complained of," and (3) that the injury is "fairly . . . trace[able] to the challenged action of the defendant." *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996). Defendants argue that Plaintiff's Texas Auto Policy was with County Mutual, not TPC, and thus TPC did not injure Plaintiff, failing both the second and third elements. (Doc. No. 47-1 at 20.) Plaintiff's entire argument for jurisdiction rests on piercing the corporate veil, making the actions of the subsidiary—County Mutual—the actions of TPC. (Doc. No. 55 at 18.) As previously held, the Court rejects Plaintiff's alter-ego argument. With that in mind, there is no connection between Plaintiff's injury, receiving less than the actual cash value for his vehicle, and TPC or Progressive Casualty such that any injury can be traced to either entity. Thus, the Court finds Plaintiff failed to establish subject matter jurisdiction over TPC or Progressive Casualty. However, Plaintiff does have standing over County Mutual.

**C.     Personal Jurisdiction**

Next, Defendants argue the Court also lacks personal jurisdiction. (Doc. No. 47-1 at

6

21.) Plaintiff disagrees, asserting "this Court may exercise personal jurisdiction over non-resident Progressive because the forum state's long-arm statute, as well as constitutional due process requirements, are satisfied." (Doc. No. 55 at 20.)

Personal jurisdiction over a nonresident defendant is proper when the state long-arm statute permits it, and if the exercise of personal jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm statute is coextensive with federal due process requirements; accordingly, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The two recognized bases for exercising personal jurisdiction over a nonresident defendant are "general jurisdiction" and "personal jurisdiction." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).

### 1. General Jurisdiction over TPC

A forum court may assert general jurisdiction over a nonresident defendant only when the defendant's connections with the forum are "so continuous and systematic as to render them essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted). For purposes of general jurisdiction, a corporation will be considered "at home" where it has its principal place of business and where it is incorporated. *Id.* at 137–38.

Here, none of the three Progressive Defendants have its principal place of business or are incorporated in California. (Doc. No. 47-5, Uth Decl., ¶¶ 4, 6, 11, 14.) TPC is incorporated in Ohio with its principal place of business in Mayfield Village, Ohio. (Uth Decl. ¶ 4.) County Mutual is both incorporated in and has its principal place of business in Texas. (*Id.* ¶ 11.) Progressive Casualty Insurance Company is both incorporated in and has its principal place of business in Ohio. (*Id.* ¶ 14.) To combat this, Plaintiff rests

7

its entire basis for general jurisdiction on alter-ego liability. If Plaintiff can pierce the corporate veil, then TPC will be "at home" in California through its subsidiaries. (Doc. No. 55 at 21–24.) However, again, the Court rejects alter-ego liability, thus, Plaintiff has not shown that any of the Progressive Defendants are at home in California.

Plaintiff briefly raises agency theory in his opposition, stating "Plaintiff's allegations equally establish agency liability." (Doc. No. 55 at 22.) However, Plaintiff does not point the Court to any specific allegations in the complaint supporting this argument, and the Court could not find any. Accordingly, the Court finds that Plaintiff does not establish agency liability. Moreover, as noted in Defendants' reply, the Ninth Circuit's agency approach to general jurisdiction was voided by the Supreme Court in *Daimler*. (Doc. No. 59 at 13.) "*Daimler* voided our agency approach for imputing contacts for the purpose of general jurisdiction." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017).

Even if the Court had not rejected Plaintiff's alter-ego argument, Defendants argue that the contacts through the California subsidiaries are still too insufficient to establish jurisdiction. (Doc. No. 47-1 at 23.) Plaintiff asserts that Progressive wrote $1.3 billion in insurance premiums in California in 2016. (FAC ¶ 23.) TPC states it "reported $16.4 billion in total net premiums in 2012 alone." (Doc. No. 47-1 at 23.) California's premiums then represent only 7.9% of their nationwide premiums.

In a Northern District of California case, the Court held that a company's small portion of sales when viewed in light of the bigger business "fall[s] far short of the high bar for exercising general jurisdiction." *Amiri v. DynCorp International, Inc.*, No. 14-cv-3333 SC, 2015 WL 166910, at *4–5 (N.D. Cal. Jan. 13, 2015). The Court reasoned that "[c]oncluding otherwise would leave [Defendant] subject to suit in any state in which it operates—a result that runs directly contrary to *Daimler*." In *Daimler*, the Supreme Court held that that the California activities of Daimler's subsidiary, Mercedes–Benz USA, LLC ("MBUSA"), were insufficient to subject Daimler to general jurisdiction in California. *Daimler AG v. Bauman*, 134 S. Ct. 746, 750–51 (2015). There, California sales only

amounted to 2.4% of Daimler's worldwide sales. *Id.* at 752. Here, other than the 7.9% of insurance premiums in California, Progressive's only other contact with California is its subsidiaries' offices. However, *Daimler* also warned of relying too heavily on the existence of local offices of real property. *Id.* at 761 n.18. Thus, the Court finds that the small percentage of premiums in California when compared to its nationwide figures and having its subsidiaries' offices in California is not enough to establish the high bar to exercise general jurisdiction. Accordingly, the Court finds there is no general jurisdiction over any of the Progressive defendants.

### 2. Specific Jurisdiction over TPC

Absent traditional bases for specific jurisdiction (i.e. physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S.at 316. Accordingly, where, as here, there is no physical presence, domicile, or consent, jurisdiction exists only if: (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum or purposely directs his activities at the forum; (2) the claim arises out of the defendant's forum related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybershell, Inc. v. Cybershell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)). Plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If plaintiff succeeds in satisfying both prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

#### a. *Purposeful Direction*

Where a case sounds in a tort, courts employ the purposeful direction test. *See Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802). The Court analyzes purposeful direction under the *Calder* effects test, which requires the defendant to have "(1) committed an intentional

act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder v. Jones,* 465 U.S. 783 (1984)). All three parts of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805.

Here, without alter-ego liability, there is no showing that the Progressive Defendants expressly aimed any act at California. As Defendants note, "[a]ll of the critical events that allegedly support Plaintiff's claims, and the effects of those events, occurred in Texas." (Doc. No. 47-1 at 27.) And to the third factor, Plaintiff's harm also occurred in Texas, thus it was not possible for Defendants to have known any harm it caused would be suffered in California. Accordingly, the Court finds that because the second and third factors cannot be met, the Court cannot exercise personal jurisdiction over the Progressive Defendants for Plaintiff's tort claims.

### b. *Purposeful Availment*

The purposeful availment test requires that "'in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created "continuing obligations" between himself and the residents of the forum.'" *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 475–76). This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475. "'[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum.'" *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)); *see also Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can

automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). "Rather, there must be 'actions by the defendant himself that create a "substantial connection" with the forum State.'" *Picot*, 780 F.3d at 1212 (emphasis in original). A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* In determining whether there was a purposeful availment based on a contract, the Court "must look to 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine if the defendant's contacts are 'substantial' and not merely 'random, fortuitous, or attenuated.'" *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 479, 480).

Here, Plaintiff asserts that Defendants' agreement with the Mitchell International, Inc. Defendant satisfies the purposeful availment standard because Progressive provided Mitchell information "concerning the total loss vehicles . . . which Mitchell then uses to perform its valuation and adjusting services in California." (Doc. No. 55 at 25–26.) Defendants argue "[t]he Court cannot exercise specific jurisdiction over [Progressive Defendants] because the sole alleged basis for that jurisdiction is an unnamed 'Progressive' entity's contact with Mitchell, 'a California citizen, in California to provide claims administration and adjusting valuation services for vehicles." (Doc. No. 47-1 at 28 (quoting FAC ¶ 12).)

Plaintiff does not specify which Progressive Defendant contracts with Mitchell in the complaint, but broadly states that "Progressive and Mitchell" work together to implement a scheme to deflate the value of total loss claims. (FAC ¶¶ 4–5.) However, assuming that it is one or all of the Progressive Defendants, Defendants' relationship with Mitchell is for "administrative services." (FAC ¶ 9.) Merely sending Mitchell information which relates to the services Defendants contracted for does not create a substantial connection with California. Rather, the relationship here falls into *Burger King* territory. Defendants and Mitchell have a contract, and Mitchell happens to be at home in California.

Thus, Progressive's ties to California through Mitchell are more along the line of the random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person which the *Burger King* court rejected as sufficient to establish availment. *Burger King*, 471 U.S. at 475.

Accordingly, Plaintiff failed to establish that the Court has specific jurisdiction over the Progressive Defendants. The Court declines to analyze the third factor regarding fair play and substantial justice.

## IV. CONCLUSION

The lion share of Plaintiff's jurisdictional claims rests on alter-ego theory. If Plaintiff can pierce TPC's corporate veil, it can avail itself of TPC's subsidiaries' contacts with California. That argument fails in several ways, as discussed throughout this order. The Court finds that Plaintiff cannot pierce the corporate veil, and thus the Court does not have jurisdiction over all three Progressive Defendants. Accordingly, the Court **GRANTS** their motion to dismiss, (Doc. No. 47), and **DISMISSES** them from the lawsuit. Because the Progressive Defendants are now dismissed from the suit, the Court **DENIES** as moot Defendants' motion to appoint interim counsel. (Doc. No. 42.)

**IT IS SO ORDERED.**

Dated: March 29, 2019

Hon. Anthony J. Battaglia
United States District Judge