UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Blaise Williams, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Progressive County Mutual Insurance Company, Progressive Corporation, Progressive Casualty Insurance Company, and Mitchell International, Inc.,<br><br>Defendants. | Case No.: 17-cv-2282-AJB-BGS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. No. 45)** |
|---|---|

Before the Court is Defendant Mitchell International, Inc.'s motion to dismiss. (Doc. No. 45.) Because the Court finds that Plaintiff stated a claim for relief for each claim against Mitchell, the Court **DENIES** the dismissal motion. (Doc. No. 45.)

## I. BACKGROUND

Plaintiff, a Texas resident, brings this lawsuit alleging that Defendants have entered into a scheme in which Mitchell undervalues total loss vehicles such that Progressive does not have to pay out a full amount to insureds. Plaintiff owned a 2016 GMC Yukon before it was damaged by Hurricane Harvey. (FAC ¶ 53.) Plaintiff obtained insurance on the Yukon through Progressive County Mutual ("County Mutual"). (*Id.* ¶ 49.) The insurance was a Texas Auto Policy. (*Id.*) Plaintiff filed a claim with Progressive, and Progressive

1

deemed the car was a total loss. (*Id.* ¶¶ 54–56.) Plaintiff alleges the valuation used to determine the cash value of his vehicle was "fundamentally flawed" and brought suit based on a number of allegations that Mitchell and the Progressive Defendants were manipulating the system to award more favorable payouts to them.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Even more, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Moreover, "a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form

2

of factual allegations." *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) cert denied, 454 U.S. 1031 (1981)).

### III. DISCUSSION

Mitchell argues each claim against it should be dismissed. (Doc. No. 45-1.) Those claims are: (1) Tortious Contractual Interference; (2) Violations of Texas Insurance Code; and (3) Civil Conspiracy.

#### A. Tortious Contractual Interference

Plaintiff alleges Mitchell tortuously interfered with Plaintiff's contract with Progressive by "falsely representing the actual cash value of vehicles in its [Work Center Total Loss] WCTL system such that Plaintiff and Class Members would never be paid based on actual market value, age, and condition of the vehicle." (FAC ¶ 86.) Mitchell argues this claim must be dismissed because Mitchell did not have "knowledge of Plaintiff's contract with Progressive," and because Mitchell did not take "any actions that made Plaintiff's performance under the contract more expensive." (Doc. No. 45-1 at 10.) Mitchell also argues that tortious interference is "not [a] legally cognizable" claim against an adjuster. (*Id.* (quoting *JSR Micro, Inc. v. QBE Ins. Co.*, No. C09-3044 PJH, 2009 WL 2600755, at *1 (N.D. Cal. Aug. 21, 2009)).) However, Plaintiff pleads this argument as an alternative one "[t]o the extent Mitchell was not acting as an agent of Progressive. . . ." (FAC ¶ 86.) Thus, it stands.

##### 1. Plaintiff States a Claim

The elements of intentional interference are: "'(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *United Nat. Maintenance, Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (quoting *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, (1990)).

Mitchell argues it had no knowledge of Plaintiff's contract. To this factor, Plaintiff alleges:

> In licensing or otherwise contracting the use of its WCTL system to Progressive, Mitchell had knowledge of the terms of the Policy between Plaintiff and Class Members and Progressive or had knowledge of facts and circumstances that would lead a reasonable person to know about the Texas Auto Policy, including its provisions for actual cash value on total loss vehicles.

(FAC ¶ 89.) Mitchell states there is no possible way it could have had access to Plaintiff's policy or its terms because (1) Mitchell "does not have any direct contact with the Progressive entity that issued the policy, or any of Progressive's insureds," and (2) Mitchell did have knowledge regarding Plaintiff's vehicle, but that does not impute knowledge about Plaintiff's policy. (Doc. No. 45-1 at 11–12.)

Plaintiff responds stating he specifically alleged that Mitchell had knowledge of the contract and the provision regarding Texas law. (Doc. No. 51 at 12; FAC ¶ 51.) Plaintiff also alleged details regarding what Mitchell receives from Progressive when Progressive requests a valuation report, such as "a claim number, policy type, and 'Settlement Value.'" (Doc. No. 51 at 12.) These details make it at least plausible that Mitchell had knowledge of the underlying policy between Progressive and Plaintiff, which survives a motion to dismiss.

### 2. Rule 9(b) Pleading Standard

Next, Mitchell argues that Plaintiff failed to plead with specificity under Rule 9(b) for claims grounded in fraud. (Doc. No. 45-1 at 12.) Plaintiff asserts that Rule 9(b) does not apply because he does not plead fraud and the allegations he does plead are not grounded in "a unified course of fraudulent conduct. . . ." (Doc. No. 51 at 13.) The Ninth Circuit has stated "that even where fraud is not a necessary element of a claim, Rule 9(b) nonetheless applies where 'a unified course of fraudulent conduct'" is alleged that constitutes the basis of the claim. Such claims are 'said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading as a whole must satisfy the particularity requirement of

4

Rule 9(b).'" *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotations and citations omitted)).

Here, the Court finds that Plaintiff's claims arise from a unified course of alleged fraudulent conduct. Plaintiff opens his complaint by stating that Progressive is not being fair or honest because Progressive and Mitchell entered into a "scheme to artificially deflate the value of 'total loss claims.'" (FAC ¶¶ 1–6.) The fact that Plaintiff does not allege a specific fraud claim, or alleges other claims, does not prevent those claims from being grounded in the alleged fraudulent scheme. As such, Rule 9(b) applies.

Under Rule 9(b), Plaintiff must allege "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985)) (internal quotations omitted, brackets in original).

Mitchell argues that Plaintiff does not meet this burden because he "fails to specifically identify any alleged intentional conduct by Mitchell. . . ." (Doc. No. 45-1 at 13.) Mitchell also asserts Plaintiff failed to allege the "how" Mitchell falsely represented any information when Plaintiff and Defendant never had contact. (*Id.*) Plaintiff argues it adequately pleaded both elements. (Doc. No. 51 at 15.) Looking at the complaint, specifically ¶ 38, coupled with the valuation reports Plaintiff attached to the complaint, the Court finds that Plaintiff adequately pled under Rule 9(b). Plaintiff clearly delineates which Defendant engaged in what conduct, when, where, and how. The "how" is not that Plaintiff had contact with Mitchell, but how the fraud was carried out—through contact with

5

Progressive. Plaintiff's complaint furthers the purposes of Rule 9(b).

### 3. Increase Cost Under Contract Not a Required Element

Finally, Mitchell briefly argues that even if the allegations were true, they failed to increase the cost of Plaintiff's performance under the contract, (Doc. No. 45-1 at 14), however, as Plaintiff notes, this is not a required element and thus lack of pleading it does not dismiss the claim, (Doc. No. 51 at 15–16).

In sum, the Court finds that Plaintiff stated a claim against Mitchell for tortious contractual interference, thus, the Court **DENIES** dismissing this claim.

### B. Violations of Texas Insurance Code

Mitchell argues that the claim alleging violations of Texas Insurance Code should be dismissed because "Mitchell is not subject to regulation pursuant to the Texas Insurance Code. . . ." (Doc. No. 45-1 at 16.) The Texas Insurance Code defines an adjuster as one who "investigates or adjusts losses on behalf of an insurer as an independent contractor or as an employee; or supervises the handling of claims." Tex. Ins. Code § 4101.001(a)(1).

Mitchell disputes the truth of Plaintiff's allegations, which is inappropriate for a motion to dismiss. Mitchell argues it is not an adjuster or insurer and does not participate in settlements. Mitchell instead maintains that it is a software company which provides software products to Progressive. Generally, Mitchell states it is not in the business of insurance, and thus cannot be subject to the Texas Insurance Code. (Doc. No. 45-1 at 16.) In the complaint Plaintiff pleads enough facts to plausibly show that Mitchell either is an adjuster, or at least adjusts a piece of Progressive's claims when it comes to valuation of insureds' vehicles.[1] Whether Mitchell's limited role in that process turns them from a mere software company into an adjuster subject to the Texas Insurance Code is not a question the Court can resolve at this stage because it goes to the truth of the allegations, which are

---

[1] The Court notes that Mitchell argued the opposite under its analysis to dismiss Plaintiff's tortious contractual interference claim, stating that Plaintiff had adequately pleaded Mitchell was an adjuster, and thus not subject to that claim.

assumed true here.

Next, Mitchell argues that Plaintiff failed to state a claim under Ins. Code § 541.060, which makes it a violation to misrepresent a material fact or policy provision relating to coverage at issue to plaintiff, and § 541.061, which bars unfair or deceptive practices. (Doc. No. 45-1 at 21–22.) Plaintiff asserts it adequately pleaded a violation of the code. (FAC ¶ 109.) Again, it is not the Court's role at this stage to be a truth seeker. In order to violate § 541.060, the report "must be about the details of a policy, not the facts giving rise to a claim for coverage." *Ministerio International Lirios Del Valle v. State Farm Lloyds*, 3:16-cv-1212-D, 2016 WL 5791550, at *3 (N.D. Tex. Oct. 4, 2016) (citation omitted). Mitchell's argument that its valuation reports concern the breadth of coverage and do not clarify facts giving rise to a policy claim asks the Court to determine the fact of the matter. (Doc. No. 45-1 at 22; *See Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014). At this stage, those facts are already presumed true. Mitchell's arguments are appropriate for a summary judgment motion, but not a motion to dismiss. The Court finds that Plaintiff sufficiently stated a claim. The Court applies the same analysis and conclusion for Mitchell's arguments that it is not subject to § 541.061. (Doc. No. 45-1 at 22–23; Doc. No. 51 at 29–30; FAC ¶ 110.)

**C.    Civil Conspiracy**

Finally, Mitchell argues Plaintiff's civil conspiracy claim should be dismissed. (Doc. No. 45-1 at 23–24.) The elements of civil conspiracy are "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *F.D.I.C. v. Tarkanian*, No. 10CV980-WQH-BGS, 2012 WL 1570834, at *5 (S.D. Cal. May 3, 2012). Plaintiff argues they have pleaded each element. First, the common plan Defendants designed is "to implement a system to artificially reduce the actual cash value of vehicles declared total losses." (Doc. No. 51 at 31; FAC ¶ 120.) Second, the wrongful act included Mitchell's "misrepresentation of the actual cash value of the vehicles." (*Id.*; FAC ¶ 124.) Finally, Plaintiff was damaged when he received less than full cash value for

7

his vehicle. (FAC ¶ 126.)

Mitchell also argues that Plaintiff's civil conspiracy claim fails to meet the heightened pleading standard under Rule 9(b). For the reasons stated *supra*, pp. 4–5, the Court finds that Plaintiff's allegations meet the Rule 9(b) threshold. Finally, Mitchell reasserts its argument that as an adjuster for Progressive, it cannot be charged with civil conspiracy. *Supra*, p. 3. However, Plaintiff pleaded the conspiracy claim in the alternative if Mitchell is found to not be Progressive's adjuster or agent, and thus it is not barred. (FAC ¶ 125.) Finally, Mitchell argues that California does not recognize civil conspiracy based on breach of contract. (Doc. No. 45-1 at 27.) However, Plaintiff also pleads a violation of § 541.061—Texas's version of California's Section 17200 unfair competition statute—and a violation of § 541.061 can serve as the tortious act necessary in civil conspiracy's first element.

### IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff adequately pleaded each cause of action against Mitchell. The Court notes the informed arguments both parties made, however, those arguments read like summary judgment motions, arguing beyond plausibility into truthfulness. Because Plaintiff's allegations, accepted as true, contain claims that are plausible and give fair notice to Mitchell to defend itself, the Court **DENIES** Mitchell's motion to dismiss. (Doc. No. 45.)

**IT IS SO ORDERED.**

Dated: March 29, 2019

Hon. Anthony J. Battaglia
United States District Judge