UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Blaise Williams, individually, and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>v.<br><br>Progressive County Mutual Insurance Company, Progressive Corporation, Progressive Casualty Insurance Company, and Mitchell International, Inc.,<br><br>                                        Defendants. | Case No.: 17-cv-02282-AJB-BGS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. No. 89); AND**<br><br>**(2) DENYING DEFENDANT MITCHELL INTERNATIONAL, INC.'S MOTION FOR LEAVE TO AMEND, (Doc. No. 118)** |

Presently before the Court are: (1) Plaintiff Blaise Williams's ("Plaintiff") motion for class certification, (Doc. No. 89); and (2) Defendant Mitchell International, Inc.'s ("Mitchell") motion for leave to amend its answer to Plaintiff's First Amended Complaint, (Doc. No. 118.) Both motions are fully briefed. The Court held a hearing on Plaintiff's motion for certification on May 7, 2020, (Doc. No. 113), and submitted on Mitchell's motion for leave to amend, concluding that the motion was suitable for determination on the papers, (Doc. No. 123). For the reasons set forth below, the Court **DENIES** Plaintiff's motion for class certification, and **DENIES** Mitchell's motion for leave to amend.

//

1

## I.    BACKGROUND

This action is a business tort and insurance action. Plaintiff, a Texas resident, brings this lawsuit against Defendant Mitchell International, Inc. ("Mitchell"), arguing Mitchell is an unlicensed insurance agent/adjuster. Plaintiff also challenges Mitchell's use of its Work Center Total Loss ("WCTL") software to adjust the "actual cash value" ("ACV") of "total loss" vehicles, arguing this system results in insureds obtaining an ACV less than the actual value of their cars.

On September 6, 2016, Plaintiff purchased a 2016 GMC Yukon for $48,050.00. (First Amended Complaint, ("FAC"), Doc. No. 38 ¶ 48.) Plaintiff obtained insurance on the Yukon through Progressive County Mutual ("Progressive"). (*Id.* ¶ 49.) The insurance policy was a Progressive Texas Auto Policy. (*Id.*) Around August 26, 2017, Plaintiff's 2016 GMC Yukon was significantly damaged as a result of Hurricane Harvey. (*Id.* ¶ 53.) Plaintiff filed an insurance claim with Progressive, and Progressive deemed the car a "total loss." (*Id.* ¶¶ 54–56.)

Progressive used the WCTL software system licensed from Mitchell to determine the ACV of "total loss" vehicles, including Plaintiff's Yukon. Initially, Progressive told Plaintiff that based on Mitchell's WCTL valuation system, the ACV of the Yukon at the time of the loss was $38,109.27. Progressive subsequently made an offer to settle the claim for $40,341.34. (*Id.* ¶ 59.) Plaintiff disputed and negotiated the ACV of the Yukon but was told Progressive could not change the valuation provided by Mitchell. (*Id.* ¶ 61.) Using Mitchell's WCTL system again, Progressive made a final offer to settle Plaintiff's claim in the amount of $42,112.17, based on Mitchell's valuation of $39,775.92. (*Id.* ¶ 62.) According to Plaintiff's own research on the market value, age, and condition of the Yukon, Plaintiff alleges the ACV of the car at the time of the flood was actually $44,025. (*Id.* ¶ 63.)

At bottom, Plaintiff alleges the WTCL system used to determine the ACV of his vehicle was "fundamentally flawed," and Mitchell and Progressive were manipulating the system to decrease the ACV of the vehicles. Specifically, Plaintiff alleges the WCTL system intentionally undervalues a total loss vehicle's worth and "thereby cheats Plaintiff

2

and Class Members out of the full amount owed under the Texas Policy." (Doc. No. 89-1 at 6.) Plaintiff argues the WCTL system uses an impermissible "projected sold adjustment," which reflects a consumer's purchasing behavior (i.e., negotiating a lower price), and fails to consider the condition of comparable vehicles. (*Id.*)

Based on these facts, Plaintiff alleges Mitchell violated the Texas Insurance Code by serving as an unlicensed agent. To the extent Mitchell is held to not be an agent of Progressive's, Plaintiff alternatively alleges Mitchell conspired with Progressive to artificially reduce the ACV of vehicles declared total losses, and tortiously interfere with Progressive's contract with its insureds. (Doc. No. 72 at 8.)

## II.   PROCEDURAL HISTORY

On November 8, 2017, Plaintiff filed suit against Mitchell and Progressive (Doc. No. 1.) Plaintiff amended his Complaint ("FAC") on February 16, 2018. (Doc. No. 38.) The FAC asserted the following claims: breach of contract, tortious interference with contract, violations of the Texas Insurance Code, breach of the implied covenant of good faith and fair dealing, and civil conspiracy. Both Mitchell and Progressive filed motions to dismiss. After full briefing of the motions to dismiss, the Court dismissed the claims against Progressive for lack of personal jurisdiction. (Doc. No. 71.) Those claims have been refiled in Texas state court. (Doc. No. 94 at 6.) As to Mitchell, the Court found that Plaintiff had stated a claim against Mitchell for tortious contractual interference, violations of the Texas Insurance Code, and civil conspiracy. (Doc. No. 72.) On January 13, 2020, Plaintiff filed a motion for class certification, (Doc. No. 89), and on May 26, 2020, Mitchell filed its motion for leave to amend, (Doc. No. 118). Both motions are fully briefed, and this order follows.

## III.   LEGAL STANDARD

A plaintiff seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

A plaintiff must also establish that one of the subsections of Rule 23(b) is met. In the instant case, Plaintiff seeks certification under subsection (b)(2) for an injunctive relief class. Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

A plaintiff bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158–61 (1982); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977). The court must conduct a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (internal citations omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.*

## IV.   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### A.   Standing to Seek Injunctive Relief

Plaintiff seeks an injunction requiring Mitchell to disclose in WCTL reports that there are alternative methods to the WCTL system, such as other guidebooks, for valuing total loss vehicles. (Doc. No. 89-1 at 21.) As an initial matter, Mitchell challenges Plaintiff's Article III standing to bring an injunctive relief class. (Doc. No. 94 at 18.) To establish Article III standing, Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In addition to these three requirements, for injunctive relief—which is a

4

prospective remedy—the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, the "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted). Past wrongs, though insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).

Mitchell does not dispute the second or third prongs required for standing. Instead, Mitchell disputes the injury-in-fact prong, and the requirement of a threat of future injury necessary for injunctive relief. Mitchell's challenge to Plaintiff's standing is two-fold. First, Mitchell argues standing for an injunction does not exist because Plaintiff was never injured by Mitchell's alleged lack of disclosures in the first instance.[1] (Doc. No. 94 at 19.) Particularly, Mitchell states there is a disconnect between the injunctive relief sought (mandating disclosures of alternative valuation methods), and Plaintiff's injury (decreased ACV) because Plaintiff knew from the start that there were other resources to guide the valuation of his Yukon. (*Id.*) Plaintiff himself looked to the National Automobile Dealers Association ("NADA") Guidebook and the Kelley Blue Book as alternatives to challenge the values calculated by the WCTL system. (*Id.*, Ex. G, Blaise Williams Deposition at 38:24-40:1.) Second, Mitchell further argues there is no standing to seek injunctive relief

---

[1] Mitchell also argues Plaintiff only seeks injunctive relief against Progressive, and not Mitchell in the FAC. (Doc. No. 94 at 23.) Although Federal Rule of Civil Procedure 8(a) requires that a "pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief," a court is not limited to the relief sought in this demand when entering a final judgment. *See* Fed. R. Civ. P. 54(c) (final judgments other than default judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). For example, the Ninth Circuit has applied this rule to uphold a court's power to award declaratory relief when that relief was not requested in the complaint. *See Arley v. United Pacific Ins. Co.*, 379 F.2d 183, 186–187 (9th Cir. 1967). Mitchell makes no showing that it would be prejudiced by a request for injunctive relief. Additionally, as explained below, Plaintiff's Texas Insurance Code claim against Mitchell specifically allows for injunctive relief.

because there is no threat of future harm. Mitchell draws a comparison to false advertising cases and points out that even if Mitchell were to suffer another total loss to a vehicle, "[i]t is impossible for Williams to not know what he already knows" about the existence of other alternatives to the WCTL system. (*Id.* at 20.)

In reply, Plaintiff contends he was injured because he received less than the ACV under the insurance policy. (Doc. No. 104 at 7.) Furthermore, to counter Mitchell's statement that there is no threat of future harm, Plaintiff relies on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). In *Davidson*, the Ninth Circuit held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

First, Plaintiff has alleged an injury-in-fact. Plaintiff's theory of the case is Mitchell "misrepresented the actual cash value of total loss vehicles and failed to state the material fact that its WCTL system was structured to artificially reduce the model value, age, and condition of the vehicles at the time of the loss." (FAC ¶ 111.) As stated by Plaintiff, the WCTL system allegedly incorporates mechanisms that artificially suppress the ACV of vehicles, causing Plaintiff to receive an ACV lower than he should have received. Thus, there is an injury Plaintiff can point to.

Secondly, Plaintiff has additionally demonstrated a threat of future harm sufficient to confer standing for injunctive relief. Specifically, under Ninth Circuit authority, Plaintiff "properly alleged that [he] faces a threat of imminent or actual harm by not being able to rely on [the WCTL report] in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Davidson*, 889 F.3d at 967. Because Plaintiff is still a Progressive policyholder, he faces the inability to trust the WCTL reports in the event he faces another total loss of a vehicle. As stated in *Davidson,* "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future."

6

*See id.* at 969. Therefore, Plaintiff faces the uncertainty of whether Mitchell's WCTL system will include alternative methods for ACV calculation, or not, in the future. Accordingly, Plaintiff has sufficient standing to bring an injunctive relief class.

### B.   Injunctive Relief Under the Texas Insurance Code

Next, Mitchell argues that the Texas Insurance Code ("TIC" or "the Code") does not provide for the relief Plaintiff seeks because the TIC does not allow Williams to act as a "private attorney general," seeking remedies for wrongs that he himself did not suffer. (Doc. No. 94 at 21.) The two TIC provisions allowing for a private plaintiff to bring claims under the statute have an express requirement of a showing of actual "damages." Mitchell argues Plaintiff has no actual damages because "Williams wants a disclosure informing him of something he already knew." (*Id.* at 22.)

Here, Plaintiff's request for injunctive relief is specifically enumerated in the TIC. The Code provides that "[a] person who sustains actual damages may bring a claim against another person for those damages caused by the other person engaging in an [unfair method of competition or an unfair or deceptive act or practice in the business of insurance.]" Tex. Ins. Code § 541.151(1). If a plaintiff prevails in such an action, the plaintiff may seek actual damages, attorneys' fees, ***injunctive relief***, and "any other relief the court determines is proper." *Id.* at § 541.152(a). Section 541.251 also allows a "member of the insurance buying public [that] has been damaged by an unlawful method" to bring an action "on the individual's own behalf and on behalf of others similarly situated to recover damages and obtain relief as provided by this subchapter." Here, at least for standing purposes, Plaintiff has alleged damages in receiving a lower ACV than he was entitled to. Thus, there is no barrier prohibiting injunctive relief.

### C.   Federal Rule of Civil Procedure 23(a)

Having determined that Plaintiff has standing, the Court will next turn to whether Plaintiff has met the Rule 23(a) elements necessary to certify a class. Plaintiff seeks to certify the following class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2): "All insureds under Progressive's Texas Auto Policy (i) whose vehicles were declared total

7

losses by Progressive and (ii) whose claims were valued utilizing Mitchell's WCTL system." (Doc. No. 89-1 at 7.) The Court will address the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy below.

### 1. Numerosity

Under Rule 23(a)(1), a lawsuit may only proceed via a class if the "class is so numerous that joinder of all members is impracticable." Here, there is no dispute that there are potentially thousands of putative class members under the proposed class definition. Mitchell has used the WCTL valuation system in assessing the ACV for claims submitted to Progressive by its insureds since at least 2010. (FAC ¶ 4.) Additionally, Mitchell assesses thousands of total loss claims per year for Progressive using the WCTL valuation system. (*See* Steckler Declaration, Exhibit 3.) And, after Hurricane Harvey, approximately a million automobiles were destroyed in the Houston area. Mitchell does not dispute these facts, and so, this element is satisfied. *See Charlebois v. Angels Baseball, LP*, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2. Commonality

The commonality factor "requires the plaintiff to demonstrate that the class members have suffered the same injury, which does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. The "claims must depend on a common contention" and "that common contention . . . must be of such a nature that it is capable of class-wide resolution." *Id*. The commonality requirement of Rule 23(a)(2) is construed less rigorously, for example, than the "predominance" requirement of Rule 23(b)(3). *Id.* Indeed, for purposes of Rule 23(a)(2), even a single common question will suffice. *Id.* at 2556.

Plaintiff argues commonality is satisfied because each putative class members' vehicle was declared a total loss by Progressive and valued utilizing Mitchell's WCTL system. (Doc. No. 89-1 at 15.) Plaintiff asserts proof that Mitchell's WCTL system

systematically undervalues total loss vehicles insured under Progressive's Texas Policy would be common to all class members. (*Id.*) Furthermore, Plaintiff has identified several questions of law and fact he contends are common to the entire class. These issues include, for example: (1) whether Progressive's Texas Policy required it to pay ACV to its Texas insureds; (2) whether Progressive failed to pay ACV to its Texas insureds; (3) whether Mitchell's WCTL system's valuation represents the ACV of vehicles at the time of the loss; (4) whether Mitchell is an "adjuster" under the Texas Insurance Code; and (5) whether Progressive and Mitchell had an agreement or understanding on how to calculate the ACV of vehicles declared a total loss. (Doc. No. 89-1 at 16–17.)

In opposition, Mitchell argues, "[t]here is a disconnect between the 'common issues' Williams identifies and the relief he seeks," because the common issues "have nothing to do with the injunctive relief Williams seeks." (Doc. No. 94 at 24.) Mitchell contends that a finding that the WCTL system's valuation does not represent the ACV of vehicles at the time of the loss will not be remedied by compelling Mitchell to "make disclosures on its total loss reports . . . that there are other ways to calculate ACV that may result in higher values than the WCTL system." (Doc. No. 94 at 24.)

While the disconnect Mitchell points out is indeed concerning, the relevant inquiry for this element is whether "common questions contain[] the glue necessary to say that examination of all the class members claims for relief will produce a common answer to the crucial question[s] raised by the plaintiffs' complaint." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 (9th Cir. 2014) (internal quotations omitted). Mitchell's corporate representative, Philip Kroell, testified that the same methodology employed by the WCTL system "is common to every claim that is evaluated by the [WCTL] system." (Steckler Declaration, Exhibit 4, 41:25-42:3.) Because the methodology of calculating the ACV is the same for all total loss claims, the common questions of whether the WCTL system misrepresented the ACV of vehicles, whether class members were entitled to ACV, and whether Mitchell was an "adjuster" under the Texas Insurance Code will "drive the resolution of the litigation." *Jimenez*, 765 F.3d at 1165. Accordingly, commonality is

9

satisfied.

### 3. Typicality

While Plaintiff has satisfied numerosity and commonality, Plaintiff cannot demonstrate typicality. Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal citations omitted). However, a court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

In proving typicality, Plaintiff argues his total loss vehicle was insured under the same Progressive Texas Policy and undervalued by the same Mitchell WCTL system as every member of the putative class. Therefore, typicality is "necessarily satisfied where, as here, 'the plaintiff endured a course of conduct directed against the class.'" (Doc. No. 89-1 at 17 (quoting *Just Film v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).) Additionally, Plaintiff states the elements needed to prove violations of Texas Insurance Code §§ 541.060(a) and 541.061, tortious interference, and civil conspiracy are the same for all putative class members. (*Id.* at 18–19.)

Mitchell pushes back, arguing Plaintiff's claims are not typical because the "course of conduct involved differs from a vast majority of the proposed class's claim." (Doc. No. 94 at 25.) Mitchell points out that 94% of Progressive's total loss claims settle after the first phone call from Progressive with the proposed settlement value from the first WCTL valuation report. (Doc. No. 89-1 at 9.) By contrast, Plaintiff's total loss claim took at least

10

sixteen calls with Progressive representatives and three reports run to negotiate a higher settlement value. (Doc. No. 94 at 25.)

Here, the element of typicality is not met. "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon*, 976 F.2d at 508). The gravamen of Plaintiff's claims is that Mitchell misrepresented the ACV of total loss vehicles and failed to state that its WCTL system was structured to artificially reduce the model value, age, and condition of the vehicles at the time of the loss. (FAC ¶ 111.) Plaintiff states that because of the misrepresentation, he received a lower ACV than he should have received. But as noted by Mitchell, Plaintiff is not a typical plaintiff. According to Progressive's statistics, 94% of the total loss claims are settled by the first call. (Doc. No. 89-1 at 9.) By contrast, Plaintiff's claim did not settle until after sixteen calls. During the negotiations, Progressive also requested Mitchell run a specialty report, an individualized report created by Mitchell. (Doc. No. 94 at 25.) For specialty reports, rather than having the software automatically pull car comparables from data available, a human sifts through vehicle listings and recent sales to find comparables to calculate a settlement value. (*Id.*) Additionally, Plaintiff fails to meet typicality because he did not rely on the WCTL valuation report but instead on NADA and Kelley Blue Book comparables. (*Id.* at 26.) The facts do not establish that Plaintiff was even deceived by the WCTL value. Indeed, he did not take the WCTL report for face value, and instead did his own research into the ACV of his Yukon. Plaintiff then negotiated the settlement with Progressive, and settled his claim using a specialty report. (*Id.* at 24–26.) Mitchell also points out "Williams repeatedly told Progressive that his ultimate goal was to have Progressive pay an amount sufficient to have the balance on his vehicle loan paid and the lien released." (*Id.* at 5.) Williams ultimately accepted a payment of $42,112.17 from Progressive on October 19, 2017 to resolve his insurance claim—an amount that his lender agreed was sufficient to satisfy his outstanding loan. (*Id.*)

Plaintiff argues it is immaterial that Plaintiff did not rely on the WCTL report because reliance is not an element to any of the asserted claims. To the contrary, Texas district courts have held that reliance is an element of claims brought under Texas Insurance Code chapter 541, the chapter which Plaintiff relies. *See Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 558 (S.D. Tex. 2012), aff'd sub nom. *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014); *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 813 (N.D. Tex. 2010) (claims under Section 541.051 of the Texas Insurance Code for alleged misrepresentation require a plaintiff to prove that the misrepresentation caused the plaintiff's damages); *Carper v. State Farm Lloyds*, 2002 WL 31086074, at *8 (N.D. Tex. Sept. 13, 2002) (granting summary judgment for defendant on plaintiff's Insurance Code claims based on absence of evidence of reliance and causation).

Based on the foregoing, "there is a danger that absent class members will suffer" because Plaintiff might be "preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted). There is a great risk that Plaintiff's lack of reliance would consume the litigation. As such, Plaintiff has not shown typicality.

### 4. Adequacy

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this requirement, courts within the Ninth Circuit apply a two-part test, asking the following questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members? and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiff argues he and his counsel do not have any conflicts with the class. (Doc. No. 89-1 at 19–20.) Furthermore, Plaintiff adds he has been an active participant in this litigation and his counsel has prosecuted this action vigorously on behalf of himself and the class. (*Id.*) Mitchell does not challenge Plaintiff on his assertion that there are no conflicts between Plaintiff, counsel, and the proposed class. Mitchell does however attack

12

counsel's competency, pointing out counsel has only taken one deposition of Mitchell's corporate representative. (Doc. No. 94 at 27.) That deposition, Mitchell explains, only probed "the Texas Insurance Code claim, and elicited almost no testimony on the WCTL methodology and whether WCTL reaches accurate valuations." (*Id.*) Mitchell also states Plaintiff only has one expert witness, who will only opine on whether Mitchell is an adjuster under the Texas Insurance Code and will offer no opinion on a damage's methodology or about the validity of the WCTL valuation software. (*Id.*) Finally, Mitchell also calls into question Plaintiff's counsel's legal research abilities, in addition to failing to file the motion for class certification under seal.

First, Mitchell's arguments regarding counsel's adequacy are unpersuasive. Based on counsel's work on this litigation thus far, the counsel would not be inadequate. Counsel has successfully briefed and argued Mitchell's motion to dismiss and has shown a willingness to "prosecute the action vigorously." *In re Mego Fin'l Corp. Secur. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). While the Court does not doubt that Plaintiff has prosecuted the action vigorously, as discussed above, there are concerns as to whether Plaintiff may be an adequate representative due to his atypical situation. *See Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) ("Issues of typicality and adequacy of the class representatives' representation often blur, and the Court will not restate its prior points with regard to the proposed class representatives."). As such, the Court finds that Plaintiff is an inadequate class representative.

\* \* \*

In sum, Plaintiff fails on the Rule 23(a) typicality and adequacy elements necessary for class certification.

### D.  Federal Rule of Civil Procedure 23(a)

A plaintiff seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Here, Plaintiff seeks only to certify a class under Rule 23(b)(2). Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to

13

act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . ." Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. *See Dukes*, 564 U.S. at 360–61. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. *Id.* Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. *Id.*

Briefly, even if Rule 23(a) was met, it is questionable whether Plaintiff may certify the class under Rule 23(b). Plaintiff's requested injunctive relief—requiring Mitchell to make disclosures on its WTCL total loss reports—would apply to the class as a whole, because Mitchell would be required to make disclosures on every WCTL report to Progressive insureds. However, based on Plaintiff's allegations, the putative class members are also entitled to "individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61. Namely, this would be the difference between the ACV calculated by the WCTL system, and the actual value of the car at total loss. Because each class member would be entitled to an individualized award of monetary damages, Plaintiff has not satisfied Rule 23(b)(2).

\* \* \*

In summation, Plaintiff has not shown typicality or adequacy necessary for class certification under Rule 23(a). Neither has he shown that class certification is appropriate under Rule 23(b)(2). As such, the Court **DENIES** Plaintiff's motion for class certification. (Doc. No. 89.)

## V.   MITCHELL'S MOTION FOR LEAVE TO AMEND

Mitchell seeks leave to amend its answer to add a counterclaim under Texas Insurance Code §§541.153 and 541.253, both of which award attorneys' fees and costs for the filing of actions under the TIC which are groundless and brought in bad faith or brought for the purpose of harassment. (Doc. No. 118.) Section 541.253 of the TIC states, "[t]he

14

19-cv-02422-AJB-AHG

court may award to the defendant court costs and reasonable attorney's fees in relation to the work expended on a finding by the court that a class action under this subchapter was brought by an individual plaintiff in bad faith or for the purpose of harassment." Section 541.153 similarly states, "[a] court shall award to the defendant court costs and reasonable and necessary attorney's fees if the court finds that an action under this subchapter is groundless and brought in bad faith or brought for the purpose of harassment." "A claim for attorney fees under Section 541.153 is an independent claim for affirmative relief" and must be brought as a counterclaim. *See Knoderer v. State Farm Lloyds*, 515 S.W.3d 21, 47 (Tex. App. 2017).

Rule 15(a) governs leave to amend prior to trial. A party may amend its pleading once as a matter of course within 21 days after serving it; or, if the pleading is one requiring a response, within 21 days after service of the responsive pleading or motion. *See* Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of leave to amend is in the Court's discretion. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). "In determining whether to grant leave to amend, the court considers five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the [party] has previously amended [its pleading]." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004)).

In opposition, Plaintiff argues "Mitchell has known that Plaintiff asserts TIC claims against it for more than two and a half years, but Mitchell's motion fails to explain why it just now seeks to amend its pleadings to include its counterclaim." (Doc. No. 121 at 9.) Plaintiff maintains that despite Mitchell's contention that additional discovery is not needed, the deadline for fact discovery has passed, and Plaintiff has not had an opportunity to defend against the proposed claim. (*Id.* at 10.) Lastly, Plaintiff argues in opposition that the addition of Mitchell's proposed claims is futile because Mitchell has not pled facts tending to show Plaintiff's TIC claims are groundless, asserted in bad faith, or harassing.

(*Id.* at 13.)

The Court agrees with Plaintiff and will deny Mitchell's request for leave to add a counterclaim. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Manipoun v. DiBella*, No. 17-CV-02325-AJB-BGS, 2019 WL 1937574, at *2 (S.D. Cal. May 1, 2019 (citing *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)). Mitchell does not adequately explain why it only now discovered this claim, and why it could not have asserted this claim two years ago. Indeed, Mitchell knew about Plaintiff's TIC claim from the inception of this suit because it was included in Plaintiff's Complaint in November 2017. (Doc. No. 1.) Furthermore, fact discovery closed on December 30, 2019, and expert discovery closed on May 29, 2019. (*See* Doc. Nos. 80, 108.) Therefore, to either reopen discovery, or allow the addition of the claim without discovery as Mitchell advocates, would prejudice Plaintiff as his claims have been pending for two years without allegations of bad faith.

Furthermore, there are some questions as to whether amendment would be futile. To bring a claim under TIC § 541.153, a defendant "must establish that the plaintiff's claims were (1) groundless and brought in bad faith, or (2) groundless and brought for the purpose of harassment." *Arizpe v. Principal Life Ins. Co.*, No. 3:18-CV-1010-G, 2019 WL 4246598, at *2 (N.D. Tex. Sept. 6, 2019). Mitchell argues Plaintiff's contention that Mitchell is an adjuster under the TIC lacks support under law and fact. (Doc. No. 118-1 at 47.) However, the Court notes that Plaintiff's TIC claim has at least survived Mitchell's motion to dismiss. Whether Plaintiff may ultimately prevail is not at issue today, but Plaintiff's ability to survive a motion to dismiss calls into question Mitchell's argument that the TIC claim was brought frivolously. Thus, upon review of the factors relevant to a Rule 15 analysis, the Court **DENIES** Mitchell's motion considering Mitchell's delay in proposing the counterclaim, coupled with the potential prejudice to Plaintiff and futility of amendment.

## VI.   CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion for class certification,

16

1   (Doc. No. 89), and **DENIES** Mitchell's motion for leave to amend, (Doc. No. 118).

2

3        **IT IS SO ORDERED.**

4   Dated:  December 3, 2020

5                                                   _____
                                                    Hon. Anthony J. Battaglia
6                                                   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19-cv-02422-AJB-AHG